UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

    Plaintiff,

    v.

BENJAMIN L. KIRSON and
KAREN L. KIRSON,

    Defendants,

    and

BRIONNA HECKSTALL,

    Intervenor Defendant.

Civil Action No. TDC-18-3275

**MEMORANDUM OPINION**

In 2017, in a civil action in the Circuit Court for Baltimore County, Maryland, Defendants Benjamin and Karen Kirson ("the Kirsons") were found liable to Intervenor Defendant Brionna Heckstall (collectively, "Defendants") for injuries she suffered from exposure to lead paint while she was their tenant. *See Heckstall v. Kirson*, No. 24-C-15-000776 (Cir. Ct. Balt. Cty. 2015). The Kirsons, in turn, sought indemnification for the full amount of that judgment from Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), with which they had a commercial general liability insurance policy ("the Policy") for a portion of the time that Heckstall resided in one of their properties containing lead paint. Penn National filed a declaratory judgment action in this Court seeking a determination on the portion of the state court judgment that it is required to pay under the Policy. The central dispute in this case is whether Penn National

is obligated for the entire judgment amount or for only a pro rata portion of it corresponding to its "time on the risk," consisting of the time period of lead exposure occurring while the Policy was in force. During the pendency of the present action, the Court of Appeals of Maryland decided a case addressing the question of the proper method for calculating indemnification liability in continuous exposure cases, *Rossello v. Zurich American Insurance Co.*, 226 A.3d 444 (Md. 2020). With the benefit of *Rossello*, the parties have filed Cross Motions for Summary Judgment on the scope of Penn National's liability. Having reviewed the briefs and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Penn National's Motion for Summary Judgment will be GRANTED, and Defendants' Cross Motions for Summary Judgment will be DENIED.

## BACKGROUND

### I. Heckstall's Occupancy

Heckstall was born in 1994. Beginning in June 1996, her family lived at 1121 E. 20th Street in Baltimore, Maryland ("the 20th Street Property"), a residence which was owned by the Kirsons when Heckstall moved in but was sold by the Kirsons on September 3, 1996. On January 18, 1997, Heckstall moved with her family to another Kirson property, located at 2311 Harford Road in Baltimore, Maryland ("the Harford Road Property"). The Kirsons sold the Harford Road Property on February 28, 1997, but Heckstall and her family remained there until some point in October 1997.

### II. The Policy

On November 4, 1991, Penn National issued an automatically renewing commercial general liability ("CGL") insurance policy to the Kirsons. The Policy provided coverage for a list of specifically identified properties which the Kirsons "Own, Rent or Occupy," including the

Harford Road Property but not including the 20th Street Property. On September 7, 1996, the Kirsons attempted to add the 20th Street Property to the Policy but could not do so because they had sold it four days before and thus no longer owned it.

The Policy provided coverage for, in relevant part, "those sums that the insured becomes legally obligated to pay," as a result of bodily injury "to which this insurance applies," that occurred "during the policy period," with an aggregate limit of $1,000,000. Policy at 1, 7, Penn Nat'l Mot. Summ. J. Ex. 5, ECF No. 52-6.[1] "Bodily injury" is defined in the Policy as "bodily injury, sickness or disease sustained by a person," and "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 15, 17. Pursuant to an amendment to the Policy, the $1,000,000 aggregate limit applied separately to each of the properties covered by the Policy.

The Policy obligates Penn National to pay pre-judgment interest awarded against the Kirsons "on that part of the judgment we pay" and provides that when Penn National makes an offer to pay an amount equal to the limit of the coverage, it will not pay pre-judgment interest for any period of time after such an offer was made. *Id.* at 12. As to post-judgment interest, the Policy obligates Penn National to pay "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within the applicable limit of insurance." *Id.* at 12.

The Policy remained in effect from November 4, 1991 to August 1, 1997.

---

[1] Page citations to the Policy are to the page numbers assigned by the Court's Electronic Filing System.

3

## III. The State Court Action

On February 13, 2015, Heckstall filed suit against the Kirsons in the Circuit Court for Baltimore County ("the State Court Action"), alleging that she was injured by exposure to lead paint while living in the Kirson properties. Penn National defended the Kirsons in that action but disclaimed any obligation for injuries stemming from the 20th Street Property and reserved the right to pay any damages arising from the Harford Road Property based on the pro rata method of calculation determined by "time on the risk."

At trial, the evidence established that Heckstall had blood lead levels ("BLLs") above the United States Centers for Disease Control and Prevention safety threshold beginning in October 13, 1994 and continuing through to October 9, 2000. Based on these BLLs and other diagnostically significant information, Heckstall's expert witness concluded that Heckstall had specific developmental disabilities that had resulted from her childhood exposure to lead. On April 10, 2017, the jury returned a verdict in Heckstall's favor, awarding her $2,629,250.00 in damages. Based on Maryland's statutory cap on non-economic damages, *see* Md. Code Ann. Cts. & Jud. Proc. § 11-108 (West 2011), that award was reduced by the trial court to $1,959,250.00

On January 29, 2020, Penn National submitted a check to Heckstall in the amount of $37,225.75, the amount it calculated as its pro rata portion of the $1,959,250.00 judgment.

## DISCUSSION

In their Motions, the parties seek summary judgment in their favor on the question of Penn National's liability to the Kirsons for the judgment against them in the State Court Action. Based on *Rossello*, Penn National argues that its liability is limited to $37,225.75, based on the fact that the Policy's coverage of the Harford Road Property was limited to only 42 days, from January 18, 1997 to February 28, 1997, out of the 2,189 total days of lead exposure endured by Heckstall. In

4

turn, Heckstall, while implicitly acknowledging that *Rossello* requires that Penn National's liability be calculated based on a pro rata basis as measured by time on the risk, argues that Penn National is liable for the full amount of the judgment in the State Court Action based on the doctrine of unclean hands, and that Penn National is liable for pre-judgment interest in this case on the post-judgment interest that accrued on the full state court judgment.

**I.     Legal Standard**

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II. The Pro Rata Allocation Approach

Courts applying Maryland law have consistently found that for an injury occurring over an extended period of time, such as one based on lead paint exposure, an insurer's liability is calculated as its pro rata share of the overall judgment based on its "time on the risk"—the portion of the overall time period of exposure during which the insurer was providing coverage on the property at which the exposure occurred ("the pro rata allocation approach"). In *Mayor and City Council of Baltimore v. Utica Mutual Insurance Company*, 802 A.2d 1070 (Md. Ct. Spec. App. 2002) ("*Utica*"), a case involving continuing property damage caused by the presence of asbestos, the Court of Special Appeals of Maryland was presented with, among other things, the question of how to allocate liability among insurers when the period of injury spanned multiple insurers. *Id.* at 1100. The court held that in light of the continuing nature of the asbestos injury, "the obligation to indemnify the insured ... is to be prorated among all [insurance] carriers based on their time on the risk." *Id.* at 1101. The court so ruled based in part on the fact that the policy language, while guaranteeing indemnification for "'all sums' of liability for an accident or occurrence," expressly did so only for accidents or occurrences taking place "during the policy period." *Id.* at 1103 (citation omitted). Accordingly, to hold all insurers jointly and severally liable for the entire amount of liability was "incompatible" with the policy language. *Id.* at 1103. The court held that the pro rata allocation approach would also apply in cases where there was a gap in insurance coverage, such that a party which elected not to be insured would then be liable for the applicable prorated time on the risk. *Id.* at 1101-02.

In *Riley v. United Services Automobile Association*, 871 A.2d 599 (Md. Ct. Spec. App. 2005), the Court of Special Appeals applied the reasoning of *Utica* to a case involving bodily injury from exposure to lead paint, which it deemed to be a continuous injury case for which

6

insurance coverage is triggered by exposure to lead, not by the manifestation of bodily injury. *Id.* at 609. The court adopted the pro rata allocation approach for such cases as "fair" and "consistent with [the] policy language," and because joint and several liability in continuous injury cases runs contrary to "what was expected by the parties when they made those [insurance] contracts." *Id.* at 610.

In *Pennsylvania National Mutual Casualty Insurance Company v. Roberts*, 668 F.3d 106 (4th Cir. 2012), the United States Court of Appeals for the Fourth Circuit, applying Maryland law, adopted the pro rata allocation approach for calculating insurer liability in a lead paint exposure case. *Id.* at 115. In adopting the *Utica* approach, the Fourth Circuit found that the express policy language reflects that "an insured purchases an insurance policy to indemnify itself against injuries occurring within the policy period, not injuries occurring outside that period." *Id.* at 114. Because the focus is properly on the length of the policy period rather than the number of tortfeasors, the court also concluded that the pro rata allocation approach applies to the allocation of liability among multiple tortfeasors, among multiple insurers of a single tortfeasor, and to individual tortfeasors for periods during which they were uninsured. *Id.* at 113-14.

More recently, on January 31, 2020, in *Pennsylvania National Mutual Casualty Insurance Company v. Jeffers*, 223 A.3d 1146 (Md. Ct. Spec. App. 2020) ("*Jeffers*"), the Maryland Court of Special Appeals reaffirmed *Utica* and the pro rata allocation approach, in part because "[b]y its terms, a CGL policy, like the Penn National policy in this case, applies only to bodily injury that occurs during the policy period." *Id.* at 1157. That court described the proper application of this methodology, which requires identifying a numerator, "representing the time on the risk," and a denominator, "representing the period in which the injured person suffered bodily injury." *Id.* at 1156. In calculating the denominator in a lead exposure case, "each elevated [lead] level indicates

7

a bodily injury," so the period of injury extends from the date of the first elevated BLL to the date of the last elevated BLL. *Id.* at 1158–59 (citation omitted).

Finally, in *Rossello v. Zurich American Insurance Company*, 226 A.3d 444 (Md. 2020), the Court of Appeals of Maryland granted a petition for a writ of certiorari to resolve the proper way of allocating loss among multiple insurers in a continuous injury case involving asbestos exposure. *Id.* at 446. Petitioner Patrick Rossello developed mesothelioma from asbestos exposure while he was working in a building being renovated by contractor Lloyd E. Mitchell, Inc. ("Mitchell"), which had a CGL policy with Maryland Casualty Company from 1974 to 1977. *Id.* at 447–48. When Rossello sued Mitchell, the jury returned a verdict in his favor, resulting in a final judgment against Mitchell of $2,682,847.26 plus interest and costs. *Id.* at 448. To collect on that judgment, Rossello instituted garnishment proceedings against Zurich American Insurance Company ("Zurich"), the successor in interest to Maryland Casualty Company. *Id.* Although Rossello sought the entire judgment from Zurich, the trial court instead calculated Zurich's liability based on the pro rata allocation approach articulated in *Utica*. *Id.* at 448–49.

The Court of Appeals held that the pro rata allocation approach, originally articulated by the Court of Special Appeals in *Utica* and recently reaffirmed in *Jeffers*, was the "correct standard." *Id.* at 450-51, 457. The court reasoned that the policy language requiring the insurer to pay "all sums" that an insured is legally obligated to pay must be read alongside policy language limiting the coverage to bodily injury occurring "during the policy period" and "to which this insurance applies." *Id.* at 460. Based on that limitation, the court rejected the argument that policy language defining an "occurrence" to include "continuous or repeated exposure," a term which could arguably extend beyond the policy period, could require an insurer to pay damages in excess of that amount allocated based on its time on the risk. *Id.* The court thus concluded that "[t]he pro

8

rata approach is unmistakably consistent with the language of standard CGL policies," and that there was "no logic to support" the conclusion that a single policy among many "could be expected to be held liable for the entire time period." *Id.* (quoting *Utica*, 802 A.2d at 1103).

### III. The 20th Street Property

Penn National contends that it has no indemnification obligation for any injuries sustained by Heckstall at the 20th Street Property because that property was never covered by the Policy. In their briefs in opposition to the Motions, Defendants fail to oppose Penn National's Motion on this issue and thus have conceded the point. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (holding that a "failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (finding that the plaintiff had abandoned a claim "by failing to address that claim in her opposition to [the defendant's] motion for summary judgment, or to offer clarification in response to [the defendant's] reply brief"). The Court therefore finds that Penn National has no indemnification obligation for injuries to Heckstall sustained at the 20th Street Property.

### IV. The Harford Road Property

The parties do not appear to dispute that *Rossello* dictates that Penn National's indemnification obligation relating to Heckstall's exposure to lead paint at the Harford Road Property is to be calculated based on the pro rata allocation approach. To the extent that there remains any dispute on that issue, the Court concludes that the reasoning of *Rossello* squarely applies to Penn National's liability under the Policy. *See Spacesaver Sys., Inc. v. Adam*, 98 A.3d 264, 268 (Md. 2014) ("The interpretation of a contract ... is a question of law"). The Policy is identical to the CGL policy at issue in *Rossello* in all material respects. As in *Rossello*, although the Policy defines "occurrence" to include "continuous or repeated exposure" to harmful

9

conditions, it provides coverage for bodily injury that occurs "during the policy period" and "to which this insurance applies." *Rossello*, 226 A.3d at 460; Policy at 1, 7. Further, while the *Rossello* policy contains the more expansive language of requiring payment for "all sums" that an insured becomes legally obligated to pay, *Rossello*, 226 A.3d at 460, the Policy has the slightly moderated requirement of payment of "those sums" that an insured becomes legally obligated to pay, Policy at 7, an alteration that does not take the Policy out of *Rossello's* orbit, but rather underscores *Rossello's* conclusion that the intention of the parties was to create an obligation limited to the policy period. The Court thus concludes that the pro rata allocation approach is the "correct standard" for determining Penn National's indemnification obligation under the Policy. *See Rossello*, 226 A.3d at 450.

Penn National's indemnification obligation must therefore be determined by identifying a numerator, "representing time on the risk," and a denominator, "representing the period in which the injured person suffered bodily injury." *Jeffers*, 223 A.3d at 1156. The parties do not appear to dispute that the proper denominator is 2,189 days, based on trial testimony establishing that Heckstall had elevated BLLs from October 13, 1994 through October 9, 2000. *See id.* at 1158–59.

The parties, however, dispute the proper calculation of Penn National's numerator. Penn National contends that the numerator is 42 because it provided coverage on the Harford Road Property for only 42 days. Penn National arrives at this figure by starting the clock on January 18, 1997, the date of Heckstall's arrival at the Harford Road Property, and stopping it on February 28, 1997, when the Kirsons sold the property. Heckstall agrees that Penn National's clock began with Heckstall's January 18, 1997 arrival but argues that the clock continued to run until the termination of the Policy on August 1, 1997. Heckstall argues that based on the Policy language defining

10

coverage to include bodily injury sustained "during the policy period," Penn National's responsibility was not limited to time periods when the Kirsons owned the Harford Road Property. Heckstall Cross Mot. Summ. J. at 6, ECF No. 53. Heckstall's argument ignores the plain and unambiguous terms of the Policy, which provided coverage only to the delineated properties that the Kirsons "Own, Rent or Occupy." Policy at 1. Notably, the Fourth Circuit rejected a similar argument in *Roberts*, in which, as here, the CGL policy promised coverage for "Premises you Own, Rent or Occupy." *Roberts*, 668 F.3d at 118. Based on that language, and absent evidence that the insurance coverage had been assigned, the court concluded that Penn National's insurance coverage ended when the relevant insured property was sold, not when the policy ended. *Id.* Likewise, the Court concludes that Penn National's coverage of the Harford Road Property extended only for the 42-day period until that property was sold, at which point the property was no longer one that the Kirsons "own[ed], rent[ed] or occup[ied]." Policy at 1. The Court thus finds that the proper numerator is 42 and the proper denominator is 2,189. In turn, Penn National's share of the underlying judgment based on the pro rata allocation approach is 1.9 percent of $1,959,250.00, which amounts to $37,225.75

## V.    Unclean Hands

Nevertheless, Heckstall asserts that Penn National should not be granted summary judgment on the issue of its indemnification liability because Penn National has "unclean hands," Heckstall Cross Mot. Summ. J. at 2, based on the fact that Penn National has failed to meet the Policy's requirement that it tender post-judgment interest on "the full amount of any judgment that accrues after entry of judgment" before Penn National has paid "the part of the judgment that is within the applicable limit of insurance." Policy at 12.

Under the doctrine of unclean hands, "courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance." *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 552 (Md. 2007). The doctrine, however, is inapplicable here. In federal court, "[a]ctions for declaratory judgments are neither legal nor equitable," so determining whether a declaratory judgment action is a suit at law or in equity requires "look[ing] to the kind of action that would have been brought" had a declaratory judgment remedy not been available. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988); *see Poe v. Ullman*, 367 U.S. 497, 506 (1961) (noting that "the declaratory judgment device does not purport to alter the character of the controversies which are the subject of the judicial power under the Constitution" (citation omitted)). Here, the Kirsons' cause of action most closely resembles a breach of contract claim, which is an action at law, not in equity. *See, e.g., Niner v. Hanson*, 142 A.2d 798, 803 (Md. 1958) (noting that in a case in which the remedy sought, reinstatement, could be obtained only in an "equity proceeding," a theory of breach of contract was "not applicable"); *Davis v. Winter*, 178 A. 604, 606 (Md. 1935) (rejecting an argument that would permit "a plaintiff to seek relief in a court of equity for breach of contract for the sole purpose of having damages assessed," because such an assessment is "a function primarily vested in a court of law"). Consistent with these distinctions between law and equity, the Maryland Court of Special Appeals has found the doctrine of unclean hands to be inapplicable in breach of contract cases, noting that "[a] party is not guilty of fraudulent or illegal conduct," such that its hands are rendered unclean, "by merely breaking a contractual obligation." *Greentree Series V, Inc. v. Hofmeister*, 114 A.3d 230, 239 (Md. Ct. Spec. App. 2015). Thus to the extent that Penn National has failed to fulfill its contractual obligations to pay post-judgment interest on the state court judgment, that failure does

not, under the unclean hands doctrine, bar a grant of summary judgment to Penn National on its Motion or a declaration of its rights under the Policy.

Penn National's Motion for Summary Judgment will thus be granted on the issue of its indemnification obligation under the Policy relating to the state court judgment. The Court will issue a declaratory judgment stating that the pro rata allocation approach applies to Penn National's liability, and that, based on the calculation above, its obligation relating to the state court judgment is $37,225.75.

## VI. Pre-Judgment Interest

In her Cross Motion for Summary Judgment, Heckstall asserts that she is entitled to pre-judgment interest in this case. In her reply brief, Heckstall clarifies that her claim for pre-judgment interest in this case includes interest on Penn National's as yet unpaid obligation to pay post-judgment interest owed in the State Court Action, which consists of post-judgment interest on $1,959,250.00, the full amount of the state court judgment.

Heckstall's argument appears to rely on the following chain of reasoning. First, the Policy obligates Penn National to pay "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in the court the part of the judgment that is within the applicable limit of insurance." Policy at 12. By the terms of the Policy, Penn National thus became obligated to pay post-judgment interest on the entire judgment in the State Court Action of $1,959,250.00, from the entry of that judgment on April 10, 2017 until January 29, 2020, when Penn National paid $37,225.75 to Heckstall's counsel, its portion of the judgment as calculated under the pro rata allocation approach. Because Penn National was, in Heckstall's estimation, plainly obligated to pay that post-judgment interest, it owes pre-judgment interest on that amount in the present case. In addition, to the extent that a judgment in this case

13

obligates Penn National to pay more than it tendered on January 29, 2020, Heckstall appears to argue for pre-judgment interest on any higher amounts owed as a result of a judgment in the present case.

"[P]re-judgment interest as a matter of right is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 777 (Md. 2004). It is allowable "when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Harford Cty. v. Saks Fifth Ave.*, 923 A.2d 1, 13 (Md. 2007) (citation omitted). Because of the requirements that the obligation to pay and the amount due are certain prior to judgment, such interest is typically awarded only in, as relevant here, breach of contract actions such as those involving "contracts in writing to pay money on a day certain," "actions under contracts providing for the payment of interest," or "cases upon sums payable as rent." *I.W. Berman Prop. v. Porter Bros., Inc.*, 344 A.2d 65, 75 (Md. 1975).

Heckstall's argument fails. Pre-judgment interest is allowable "when the obligation to pay *and* the amount due had become certain, definite, and liquidated by a specific date prior to judgment." *Harford Cty.*, 923 A.2d at 13 (emphasis added). Here, the amount due was not certain, definite, or liquidated by any specified date. During the course of this case, the parties have taken conflicting positions on both whether the pro rata allocation approach applies and how it applies, such as on the question of whether Penn National's time on the risk includes the time period after the Kirsons sold the Harford Road Property. Absent certainty on the amount owed, pre-judgment interest on the final amount owed by Penn National is not due.

Second, even focusing only on Heckstall's argument that amount of post-judgment interest on the state court judgment was certain, the Court finds no basis to award pre-judgment interest

on that amount in this case. Heckstall is correct that in *Jeffers*, the Maryland Court of Special Appeals held that based on the plain language of the exact same clause of Penn National's CGL policy at issue in the present case, Penn National is obligated to pay post-judgment interest on "the full amount" of any judgment, "not merely interest on the portion of the judgment[] that it is contractually obligated to pay" under the pro rata allocation approach, up until the date that it "pays, offers to pay, or deposits into court" that pro rata share. *Jeffers*, 223 A.3d at 1166-67. Under *Jeffers*, it appears certain that Penn National is obligated to pay post-judgment interest on the full $1,959,250.00 state court judgment up until January 29, 2020. *See id.* The actual amount due, however, was not initially "certain" and "definite" because the meter effectively kept running until Penn National made a tender of its share of the judgment under the pro rata allocation approach, and the harm caused by the delay in paying post-judgment interest was largely addressed by the mounting obligation. *Harford Cty.*, 923 A.2d at 13. As for the period after the amount of post-judgment interest owed on the state court judgment became certain on January 29, 2020, no pre-judgment interest on that amount is owed in the present case because the issue of whether and in what amount such post-judgment interest was due was not the subject of any claim in this case. The Complaint sought a declaratory judgment that "Penn National is obligated under the Penn National Policy, and governing law, to pay no more than 1.9% of the Underlying Judgment." Compl. at 6, ECF No. 1. The Answers filed by the Kirsons and Heckstall asserted no counterclaims seeking a ruling on whether post-judgment interest on the state court judgment was owed and whether it was on the full amount of that judgment. Accordingly, the judgment in this case does not include a ruling on the issue of post-judgment interest on the state court judgment. In turn, there is no basis to award pre-judgment interest in the present case on that amount.

## CONCLUSION

For the foregoing reasons, the Court finds that Penn National's indemnification obligation to the Kirsons under the Policy is 1.9 percent of the underlying judgment of $1,959,250.00, for a total of $37,225.75. Accordingly, Penn National's Motion for Summary Judgment will be GRANTED, and Defendants' Cross Motions for Summary Judgment will be DENIED. A separate Order shall issue.

Date: March 16, 2021

THEODORE D. CHUANG
United States District Judge